UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| KIRT ALLEN GOOLD, | No. 2:16-cv-2582 AC |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment. The matter will be reversed and remanded to the Commissioner for an immediate award of benefits.[2]

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

[2] Plaintiff also requests attorney fee's pursuant to 42 U.S.C. §§ 405(g) and 406(b). See ECF No. 15 at 2. These requests are premature and will therefore be denied.

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on October 2, 2012. Administrative Record ("AR") 12.[3] The disability onset date was alleged to be June 21, 2012. AR 12. The application was disapproved initially and on reconsideration. Id. On January 9, 2015, Administrative Law Judge ("ALJ") Carol A. Eckersen presided over the hearing on plaintiff's challenge to the disapproval. AR 34-85 (transcript). Plaintiff was present via videoconference and testified at the hearing. AR 12, 36. Plaintiff was represented by attorney David Edward Bartholomew at the hearing. AR 34. Thomas C. Reed, a vocational expert, also testified at the hearing. Id.

On April 17, 2015, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 12-29 (decision), 30-33 (exhibit list). On August 2, 2016, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 3-5 (decision).

Plaintiff filed this action on October 29, 2016. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 15 (plaintiff's summary judgment motion), 18 (Commissioner's summary judgment motion), 21 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1962, and accordingly was 50 years old when he filed his application. AR 28. Plaintiff has at least a high school education and can communicate in English. Id.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[3] The AR is electronically filed at ECF Nos. 12-3 to 12-10 (AR 1 to AR 508).

2

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

////

4

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since October 2, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairments: left shoulder degenerative joint disease, obesity, and bipolar disorder (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: could occasionally balance; frequently climb ramps or stairs, stoop, kneel, crouch, or crawl; only occasionally ladders, ropes, or scaffolds; avoid moderate exposure to work at unprotected heights; and occasionally reach overhead with the left non-dominant upper extremity; can occasionally reach with the bilateral upper extremities laterally and to the front; and is limited to simple, repetitive tasks with occasional public contact.
>
> 5. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born on September 18, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

>transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).
>
>10. The claimant has not been under a disability, as defined in the Social Security Act, since October 2, 2012, the date the application was filed (20 CFR 416.920(g)).

AR 14-29.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 29.

## VI. ANALYSIS

Plaintiff alleges the ALJ made the following reversible errors: (1) the ALJ improperly weighed the medical opinions of plaintiff's treating and examining physicians; (2) the ALJ failed to consider "'other' professional medical source opinions;" (3) the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony and failed to provide germane reasons for rejecting his father's testimony; and (4) the ALJ provided an incomplete hypothetical to the vocational expert by failing to include mental limitations identified by plaintiff's treating sources. ECF No. 15 at 11-19. Plaintiff argues that the treating physician's opinion should be credited as true, and the case should be remanded for calculation of payment for benefits. ECF No. 15 at 4 (citing Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014). Because the court agrees that reversal and remand for an immediate award of benefits is appropriate on the ground that the ALJ erroneously evaluated the opinion of plaintiff's treating psychiatrist, Dr. Clark, only that argument is addressed here.

A. <u>The Medical Evidence Before the ALJ</u>

The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physician); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81

F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Accordingly, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). Even if contradicted by another doctor, the opinion of a treating or examining doctor may only be rejected for "specific, legitimate reasons based on substantial evidence." Andrew v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). In general, "conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation omitted).

1. Ross L. Clark, M.D., Treating Psychiatrist

Dr. Clark began treating plaintiff on June 7, 2012. AR 351. Treatment notes document plaintiff stated he had "mood swings and uncontrollable rage," "blackouts" from getting "too angry," would turn to alcohol due to depression, would only sleep "2-4 hours per night," and would have racing thoughts. Id. Dr. Clark observed plaintiff was "cooperative," speech was "mildly pressured," and he was "anxious and mildly agitated with dysphoric mood," with "fair" judgment and insight. AR 353. Dr. Clark diagnosed plaintiff with Bipolar mixed and a GAF score[4] of 48. AR 354. Dr. Clark's treatment plan indicates plaintiff was prescribed Lithium. Id.

On June 21, 2012, Dr. Clark noted that plaintiff had complained of "having racing thoughts and short sleeping" and feelings of depression "with crying spells." AR 349. Dr. Clark

---

[4] The Ninth Circuit has defined a GAF score as a "rough estimate" of an individual's psychological, social and occupational functioning, used to reflect the individual's need for treatment. Garrison, 759 F.3d at 1003 n.4 (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)). A GAF score of 41-50 describes "serious symptoms" or "any serious impairment in social, occupational or social functioning," while scores of 51-60 describe "moderate symptoms." Id. Because GAF scores "are typically assessed in controlled, clinical sets that may differ from work environments in important respects," they are not determinative of disability. However, they are "a useful measurement" of functioning. Id.

7

observed plaintiff was "cooperative," "anxious, mildly depressed," with judgment and insight "fair." Id. Plaintiff was continued on his psychiatric medication, with the addition of Risperidone. AR 350. On August 10, 2012, treatment notes document that plaintiff relapsed into drinking and was arrested for domestic violence. AR 334. Plaintiff was "medically cleared for detox" and continued on his psychiatric medications. Id. Dr. Clark's treatment notes for September 27, 2012, observed plaintiff was "cooperative," "anxious, mildly depressed," with judgment and insight "fair." AR 317. Plaintiff was continued on psychiatric medications, including Lithium and Quetiapine. AR 318.

On January 2, 2013, plaintiff stated he was "doing very well" and that medication was helping him sleep. AR 391. Plaintiff was observed as "cooperative, "cheerful, euthymic" with "fair judgment and insight. Id. His psychotic medications were continued. AR 392. Treatment notes for March 5, 2013 noted that "since reducing quetiapine" plaintiff "has been more irritable and agitated." AR 385. Plaintiff noted feeling "overwhelmed" and inability to "hold a job" due to temper." Id. Dr. Clark observed plaintiff was "cooperative, restless," "mood was euthymic, mildly anxious," with a "fair judgment and insight. AR 386. Dr. Clark adjusted plaintiff's mediations and made the following assessment: that despite plaintiff's sobriety, "[plaintiff] continues disabled from any and all forms of gainful employment due to bipolar illness. He has very low stress tolerance and easily becomes overwhelmed. He would not be able to interact appropriately with supervisors, co-workers or the public. This disability will last for at least the next one year and likely longer." AR 386.

Treatment notes for July 3, 2013 noted that plaintiff's was experiencing side effects, in the form of tremors, from his medications. AR 381. Plaintiff stated he struggled with "anxiety and depression" and sleep varied even with the medications. Id. Dr. Clark observed plaintiff as "cooperative," "mood was euthymic, mildly anxious," with "fair" judgment and insight. Id. Plaintiff was assigned a GAF score of 44 and his medications were adjusted. AR 382.

On January 24, 2014, plaintiff stated he was "'having some problems'" and that his "'memory [was] really bad.'" AR 404. Plaintiff was experiencing episodes, confusion and poor memory. Id. Dr. Clark observed plaintiff was "cooperative," "mildly anxious with euthymic

8

mood," with "fair" judgment and insight. AR 404-405. Dr. Clark adjusted plaintiff's medications. AR 405-406. On February 7, 2014, Plaintiff stated he was not having "freaky episodes" but was feeling "more irritable." AR 401. Dr. Clark observed plaintiff was "cooperative," "mildly anxious with euthymic mood," with "fair" judgment and insight. Id. On February 12, 2014, treatment notes noted that plaintiff "[had] been confused and forgetful." AR 400. It was also noted that plaintiff had experienced "episodes" and had driven through stop signs. Id. Dr. Clark advised plaintiff not to drive and to stop using quetiapine, as it may have been the cause of his confusion. Id. Treatment notes for March 5, 2014 noted that plaintiff was "struggling with depression" and anxiety was "off the chart." AR 492. Plaintiff was feeling overwhelmed and not able to focus. Dr. Clark opined that plaintiff "appear[ed] to be having a mixed episode of his bipolar illness." Id. Dr. Clark observed plaintiff as "cooperative but mildly agitated," "anxious with dysphoric mood," and "fair" judgment and insight. AR 493. Plaintiff's medications were accordingly adjusted. Id.

Treatment notes for April 7, 2014 noted that plaintiff's "mood was better" and that plaintiff was starting to sleep again. AR 485. However, plaintiff complained of being "down in the dumps one minute and fine the next," but that he was experiencing less confusion and racing thoughts. Id. Plaintiff also stated he was spending time "working in the yard and with his pets" and would also help "elderly neighbors with their yardwork." Id. Dr. Clark observed plaintiff was "cooperative," "cheerful, euthymic," with "fair" judgment and insight. AR 486. Plaintiff's medications were continued. Id. On June 30, 2014, plaintiff complained of "getting more anxious" and was sleeping and eating a little. AR 476. Plaintiff stated that he was "dwelling on past mistakes and regrets," "[n]ot keeping yard up," and had "been more irritable." Dr. Clark observed plaintiff was "cooperative," "anxious with dysphoric mood," with "fair" judgment and insight. AR 476-477. Plaintiff's medications were accordingly adjusted. Id.

Treatment notes for October 18, 2014 noted plaintiff's medication were helping with "agitation," "confusion," and sleep. AR 459. Plaintiff further stated his mood was improved and that he had been "spend[ing] time helping neighbors." Id. Dr. Clark observed plaintiff was "cooperative," "euthymic," with "fair" judgment and insight. AR 460. Plaintiff's medications

9

were adjusted.  AR 460-461.  However, on December 11, 2014, plaintiff stated he "[had] been irritable at times" and that he was "[s]leeping well most nights."  AR 456.  Plaintiff further stated he "[s]ometimes feels very good, other times gets agitated."  AR 456-457.  Dr. Clark observed plaintiff was "cooperative," "anxious," with "fair" judgment and insight.  AR 457.  Plaintiff's medications were adjusted.  AR 458.

### 2. The ALJ's Reasons for Giving Dr. Clark "Little Weight"

As noted, Dr. Clark stated without qualification that plaintiff was unable to interact appropriately with supervisors, co-workers or the public.  AR 386.  The ALJ gave this opinion "little weight" for the following four reasons: (1) Dr. Clark's opinion that plaintiff was "disabled from any and all forms of gainful employment due to his bipolar illness" is an opinion reserved to the Commissioner; (2) Dr. Clark's opinion was an "extreme finding" "inconsistent" with the medical record and plaintiff's testimony; (3) plaintiff's "activities of daily living and ability to earn money contradict most of Dr. Clark's findings;" and (4) Dr. Clark's opinion that plaintiff was disabled "may be the possible result of sympathy for the claimant or an effort to avoid unnecessary tension with the claimant after a demand for supporting materials has been made."  AR 23.  The court finds the ALJ erred.

"Although the ALJ is not bound by an expert medical opinion on the ultimate question of disability, she must provide 'specific and legitimate' reasons for rejecting the opinion of a treating physician."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Lester, 81 F.3d at 830–31.)  While the ALJ was correct to disregard Dr. Clark's opinion on the ultimate question of disability, the fact that he tendered such an opinion is not a permissible reason to reject his opinion as to plaintiff's inability to interact appropriately with supervisors and coworkers.

The ALJ's primary reason for rejecting Dr. Clark's opinion was that plaintiff testified that he earned $150 each month by mowing his parent's lawn and performing odd jobs for his parents' family.  However, plaintiff's ability to mow the lawn and perform occasional "odd jobs" is not inconsistent with Dr. Clark's assessment that plaintiff was unable to sustain a job on a regular basis for a significant period of time or plaintiff's ability to be able to interact appropriately with others.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not

require that claimants be utterly incapacitated to be eligible for benefits."). Moreover, the medical records indicate that plaintiff's ability to do yardwork fluctuated with his symptoms. See AR 486 (Plaintiff's mood would be "better" and would spend time working in the yard and helping elderly neighbors with theirs); AR 476 (plaintiff was more irritable and dysphoric and would be unable to "keep[] up with the yard"). There is no evidence to suggest that plaintiff's occasional yardwork involved interpersonal interactions similar to those required in a workplace. See Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("Many home activities may not be easily transferable to a work environment . . .").

Substantial evidence in the record, summarized above, shows that plaintiff's psychiatric medications were frequently adjusted in response to his fluctuating symptoms and episodes. This pattern is consistent with plaintiff's diagnosis of bipolar disorder. Edler v. Astrue, 391 F. App'x 599, 601 (9th Cir. 2010) (Bipolar disorder is "by definition is episodic.") "As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017. Accordingly, the medical record as a whole is not inconsistent with Dr. Clark's opinion, nor is that opinion fairly characterized as "extreme."

Finally, the ALJ asserted that Dr. Clark's opinion may have been improperly motivated by sympathy or patient management considerations. This assertion is speculative and unsupported by any substantial evidence in the record. The ALJ failed to identify evidence of impropriety. For all these reasons, the ALJ failed to provide specific, legitimate reasons based on substantial evidence for rejecting Dr. Clark's opinion. Andrew v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

For the reasons noted above, the ALJ improperly discounted Dr. Clark's opinion and reversal on this point is warranted.

////

B. Remand

For the reasons explained above, the ALJ erred in rejecting Dr. Clark's opinions and that error was not harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2000).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

Under the second step in the remand analysis[5], the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

In this case, if Dr. Clark's opinion was credited as true, plaintiff would necessarily be found disabled under the applicable regulations. Specifically, Dr. Clark opined that due to plaintiff's mental impairments, he "would not be able to interact appropriately with supervisors,

---

[5] As discussed above, the first step is satisfied because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Clark's opinion.

co-workers or the public." AR 386. When plaintiff's limitations, particularly as described by Dr. Clark, were put to the VE at the hearing by plaintiff's counsel, the VE testified that plaintiff would be unable to maintain employment. AR 84-85. Because the VE found that no jobs were available to plaintiff under the hypothetical incorporating Dr. Clark's opinion, plaintiff is disabled under the Act.

Where the above steps are satisfied, this court must exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If, despite satisfying the above steps, the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell, 775 F.3d at 1141 (quoting Garrison, 759 F.3d at 1021). However, the court would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

Here, the record leaves no doubt that the plaintiff is disabled within the meaning of the Act. The VE was provided a hypothetical by plaintiff's attorney that included the limitations of plaintiff being precluded from interacting with supervisors, co-workers or the public. AR 84-85. Based on this hypothetical, the VE concluded that plaintiff was prevented from maintaining full-time employment. Accordingly, the court finds that plaintiff is disabled within the meaning of the Act and no further fact finding is necessary.

VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18), is DENIED;

3. This matter is REVERSED and REMANDED to the Commissioner for an immediate award of benefits; and

4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

IT IS SO ORDERED.

DATED: March 30, 2018.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE